NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

JESSICA C., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, G.H., H.C., *Appellees*.

No. 1 CA-JV 16-0279
FILED 1-12-2017

---

Appeal from the Superior Court in Maricopa County
No. JD30699
The Honorable Kristin C. Hoffman, Judge, Retired

**AFFIRMED**

---

COUNSEL

The Stavris Law Firm PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Paul J. McMurdie joined.

**T H O M P S O N**, Judge:

¶1    Jessica C. (mother) appeals from the juvenile court's finding that she did not have good cause for failing to appear at the rescheduled day of her termination trial, and the court's subsequent order terminating her parental rights.  For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2    Mother is the biological parent of two children who are subjects of this appeal, G.H. and H.C.

¶3    In June 2015, mother left home, leaving the children behind with a significant other, unrelated to the children, without disclosing where she would be.  Six days after mother left, DCS visited the home.  DCS took temporary custody of the children because mother had not returned.  DCS then filed a petition alleging the children were dependent because mother was not able to properly parent due to her substance abuse and mental health issues and she had left the children without any way to contact her. The juvenile court adjudicated the children dependent after mother failed to appear at the dependency pretrial conference.

¶4    A report and review/permanency planning hearing was held on May 10, 2016.  At that time, the children's guardian ad litem requested that the court change the case plan to severance and adoption.  Over mother's objection, the court changed the case plan as requested.  At the same hearing, the juvenile court read a "Form 3 Notice to Parent in Termination Action" (Form 3)[1] to mother in open court.   Form 3 informed mother:

---

[1]    Form 3 advised mother of the possible consequences of failing to appear without good cause pursuant to Arizona Rules of Procedure for the Juvenile Court 64(C) and 66(D)(2) as discussed *infra* ¶ 10 and footnote 4.

> You are required to attend all termination hearings. If you cannot attend a court hearing, you must prove to the Court that you had good cause for not attending. If you fail to . . . without good cause, the Court may determine that you have waived your legal rights and admitted the grounds alleged in the motion/petition for termination. The Court may go forward with the Termination Adjudication Hearing in your absence and may terminate your parental rights to your child based on the record and evidence presented.

Ariz. R.P. Juv. Ct. Form 3. Mother acknowledged that she understood Form 3, and the court provided her with a copy. The court then scheduled the initial severance hearing for June 9, 2016.

¶5 Later in May, DCS filed a motion to terminate mother's parental rights on two grounds—1) chronic substance abuse and 2) nine-months out-of-home placement.

¶6 Mother and her counsel were present at the June 9 hearing. However, after the court was informed that mother had not been timely served with the motion for termination filed May 25, 2016, the court ordered the severance hearing rescheduled for June 15, 2016. Mother did not attend the June 15 hearing. Her attorney reminded the court that mother was residing at a rescue mission for women and children, but that he did not think the mission had restrictions on mother leaving. The court stated that if mother's attorney finds mother has appropriate reasons for not attending the hearing, "you can file a motion and I'll make that determination." The court nonetheless then ruled finding mother had waived appearance without good cause and elected to proceed in her absence.

¶7 After hearing testimony from a DCS safety specialist or case manager who was familiar with the case and appearing in place of the assigned DCS case manager, the court found the existence of DCS's alleged grounds for termination was proven by clear and convincing evidence, and ordered the termination of mother's parental rights as to both children.

¶8 On July 1, 2016, after reportedly being contacted by mother on June 30, mother's attorney filed a request for finding of good cause for failure to appear. Through the request, mother sought to compel the juvenile court to reset the initial severance hearing "to a time convenient to all parties and that the matter proceed toward a contested Severance Trial." After considering the request, on July 21 the court denied the request. Mother timely appealed. We have jurisdiction pursuant to Arizona Revised

Statutes (A.R.S.) §§ 8-235(A) (2014), 12-120.21(A)(1) (2016), and -2101(A)(1) (2016).[2]

## DISCUSSION

**¶9**        The issue before us on appeal is whether the juvenile court abused its discretion in finding mother lacked good cause for failing to appear at the rescheduled initial termination hearing and in consequently severing mother's parental rights based on the evidence provided.  Because we conclude the court did not abuse its discretion, we affirm its "no good cause" finding.  We likewise affirm the court's subsequent decision to terminate mother's parental rights to the subject children because the court did not clearly err in doing so.

**¶10**        Arizona Rules of Procedure for the Juvenile Court 66(D)(2) (Rule 66(D)(2))[3] provides the relevant provision guiding our analysis.  In pertinent part, Rule 66(D)(2) provides:

> If the court finds the parent . . . failed to appear at the *termination adjudication hearing* without good cause, had notice of the hearing, was properly served *pursuant to Rule 64*[4] and

---

[2]        Absent material changes from the relevant date, we cite a statute's current version.

[3]        The procedures of this rule give effect to A.R.S. § 8-863(C) (2014). *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 210, ¶ 14, 181 P.3d 1126, 1130 (App. 2008).  A.R.S. § 8-863(C) states: "If a parent does not appear at the [termination adjudication] hearing, the court, after determining that the parent has been served as provided in subsection A of this section, may find that the parent has waived the parent's legal rights and is deemed to have admitted the allegations of the petition by the failure to appear.  The court may terminate the parent-child relationship as to a parent who does not appear based on the record and evidence presented as provided in rules prescribed by the supreme court."

[4]        Rule 64(C) provides that a notice of hearing accompanying a motion for the termination of parental rights "shall advise the parent . . . that failure to appear at the initial hearing, pretrial conference, status conference or *termination adjudication hearing*, without good cause, may result in a finding that the parent … has waived legal rights, including the right to trial to a jury, and is deemed to have admitted the allegations in the motion or petition."  Ariz. R. P. Juv. Ct. 64(C) (emphasis added).

had been previously admonished regarding the consequences of failure to appear, including a warning that the hearing could go forward in the absence of the parent . . . and that failure to appear may constitute a waiver of rights, and an admission to the allegation[s] contained in the motion of petition for termination, the court may terminate parental rights based upon the record and evidence presented if the moving party or petitioner has proved grounds upon which to terminate parental rights.

Ariz. R. P. Juv. Ct. 66(D)(2) (emphasis added).

**¶11** "[A] finding of good cause for failure to appear is largely discretionary." *Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 101, ¶ 15, 158 P.3d 225, 230 (App. 2007) (internal citation omitted). "We therefore review the finding for an abuse of discretion and generally will reverse only if the juvenile court's exercise of that discretion was 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Id.* (quoting *LaShonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 83, ¶ 19, 107 P.3d 923, 929 (App. 2005) (internal quotation and citation omitted)).

**¶12** Here, the evidence does not support a conclusion that the juvenile court abused its discretion in finding mother failed to appear without good cause at the rescheduled termination adjudication hearing. Mother asked the juvenile court to "find that the unfortunate combination of the unforeseeable theft of her purse and the resulting lack of both information and economic resources be considered 'good cause' for her failure to appear on June 15." In support of this request, mother's attorney asserted that because her purse was stolen sometime between June 9 and the rescheduled severance hearing, which included her phone and the paperwork given to her the initial severance hearing, mother had "no ability to contact participants in the case." Mother claimed she was able to contact her case worker only after moving to another residential facility. However, the court could have concluded that mother could have done more to ensure her attendance at the severance hearing. Since mother was at the initial severance hearing on June 9 she was properly put on notice that the rescheduled hearing would be held June 15. Given that mother lost her purse before June 15, she likely had sufficient time to ask her residential facility for help in ascertaining the hearing date or to contact the court or her lawyer in her behalf. Considering that she had been told the court might terminate her parental rights if she missed the severance hearing, the court did not err by finding she failed to show good cause for her absence.

**¶13** Upon the juvenile court's finding of "no good cause" and in light of the fact that mother was properly informed as required by Rule 64, and admonished of the consequences of her failure to appear without good cause, pursuant to Rule 66(D)(2), the juvenile court acted within its discretion in proceeding to the merits of DCS's motion to terminate her parental rights. *See also Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248-49, ¶ 12, 995 P.2d 682, 684-85 (2000) (reaffirming that a parent's right to custody and control of his or her own child while fundamental, is not absolute, and that severance of a parental relationship may be warranted where the state proves one of A.R.S. § 8-533's statutory grounds for termination by clear and convincing evidence). To terminate parental rights, the juvenile court must additionally find, by a preponderance of the evidence, that severance of the relationship is in the child's best interest. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005).

**¶14** Because the juvenile court is in the best position to judge credibility and to weigh evidence, "we will accept the juvenile court's finding of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002). We do not reweigh the evidence, but "look only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 47 (App. 2004).

**¶15** There is sufficient evidence in the record to support the termination of mother's parental rights based on the grounds DCS asserted for termination and the juvenile court's best interest findings.

**¶16** First, as noted, DCS's motion to terminate mother's parental rights stated two grounds for termination—1) chronic substance abuse and 2) nine-months out-of-home placement. On appeal, mother does not dispute the existence of either of these grounds, nor could she, because they are fully established by the court's findings, as supported by the evidence.

**¶17** At trial, the coverage DCS case manager testified to the following: 1) mother has a history of chronic abuse of dangerous drugs that would likely continue for an indeterminate period of time; 2) although DCS tried to engage mother in services[5] to further her recovery from her chronic

---

[5] The DCS case manager testified that mother was offered case management services, hair follicle testing, parent aide services, referrals to community resources, substance abuse assessment, substance abuse

dependence, mother had not participated in the services; 3) at no point had mother tested and submitted a clean urinalysis, but instead missed three consecutive scheduled tests; 4) to DCS's knowledge, mother had not stopped using drugs; 5) the children had been in DCS's care for a period of nine months; and 6) mother has "substantially neglected or willfully refused to remedy the circumstances that caused her children to be in an out-of-home placement." This testimony supports the conclusion that mother is unable to discharge her parental duties on both grounds; as noted, DCS needed to show only one statutory ground for termination.

¶18        The evidence also reasonably supports the juvenile court's additional finding, by preponderance of the evidence, that severance of parental rights would be in the children's best interest. As the case manager stated, "[mother had] not shown that . . . [she has] the willingness or the ability to parent [the children] . . . and the children really do need to start having some permanency . . . [i]f they went back to [mother] . . . there would be a risk of harm or their safety would be at risk." DCS's case manager indicated that the children would not achieve permanency if they returned to mother and that DCS believed the children were adoptable. The case manager also stated that DCS was assessing a maternal aunt as a potential placement, and if that turns out to not be a good placement, DCS would submit "a motion for a request for foster care for both children." Based on this evidence, it would not be in the children's best interests to remain in mother's custody.

¶19        We therefore uphold the juvenile court's order of severance because it was not clearly erroneous.

---

treatment, transportation, urinalysis, and visitation. In fact, mother was referred to substance abuse training four times, but each time she was closed out of services for lack of contact and compliance.

**CONCLUSION**

**¶20** Having found there is sufficient evidence to support the juvenile court's finding that mother failed to appear at the rescheduled termination adjudication without good cause and that the court did not err in severing mother's parental rights, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA